**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**MEGAN SCHWARTZ,**

**Plaintiff,**

**v. CASE NO:**

**ADVENTIST HEALTH SYSTEM/SUNBELT, INC.**

**d/b/a ADVENTHEALTH CARROLLWOOD,**

**Defendant.**

______________________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, MEGAN SCHWARTZ, (hereinafter "Plaintiff" or "Ms. Schwartz"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, ADVENTIST HEALTH SYSTEM/SUNBELT, INC. d/b/a ADVENTHEALTH CARROLLWOOD (hereinafter "Defendant" or "AdventHealth") and alleges:

## INTRODUCTION

1. The Plaintiff brings this action against Defendant, her employer, seeking to recover damages for unlawful discrimination based on disability, failure to accommodate, failure to engage in the good-faith interactive process, and retaliation in violation of the Americans with Disabilities Act of

1990, as amended ("ADA"), 42 U.S.C. § 12101 et seq. In addition, Plaintiff seeks to redress violations by Defendant of the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 et seq. ("FMLA").

2. As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against her, failed to provide her a reasonable accommodation, failed to engage in a good-faith interactive process, altered the terms, conditions, and privileges of her employment because of her disability, and retaliated against her in violation of her rights under the ADA. Plaintiff further alleges that Defendant unlawfully interfered with the exercise of Plaintiff's FMLA rights and unlawfully retaliated against her for exercising those rights in violation of the FMLA.

3. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered actual damages: loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, she has suffered and continues to suffer loss of her professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4. Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343.

6. This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7. Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Hillsborough County, Florida.

## PARTIES

8. Plaintiff is MEGAN SCHWARTZ, a 45-year-old female who manages a chronic medical condition involving ongoing immune suppression, confirmed by bloodwork and laboratory testing, that causes persistent fatigue, non-restorative sleep, cognitive strain, and physical flare-

ups. This condition substantially limits one or more major life activities, including sleeping, concentrating, caring for herself, and working. Plaintiff manages her condition under the care of her treating physician and her licensed therapist, and resides in Land O Lakes, Pasco County, Florida.

9. Plaintiff is a member of a class protected against discrimination and retaliation based on her disability under the ADA, and is protected against interference and retaliation under the FMLA.

10. On or about May 19, 2025, Defendant hired Plaintiff as an Organizational Effectiveness Manager within its Human Resources function at AdventHealth Carrollwood, and Defendant has employed Plaintiff from that date through the present.

11. At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal statutes.

12. At all times material herein, Plaintiff was an employee entitled to protection as defined by the ADA and the FMLA.

13. The Defendant, ADVENTIST HEALTH SYSTEM/SUNBELT, INC. d/b/a ADVENTHEALTH CARROLLWOOD, is a corporate health system with a principal place of business located at 900 Hope Way, Altamonte Springs, FL 32714, and operates AdventHealth Carrollwood,

located at 7171 North Dale Mabry Highway, Tampa, FL 33614, Hillsborough County, Florida, where it employed Plaintiff.

14. At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Hillsborough County, Florida, employed more than fifteen (15) employees, and employed more than fifty (50) employees within seventy-five (75) miles of Plaintiff's worksite.

15. At all times material herein, Defendant met, and continues to meet, the definitions of "employer" under all applicable federal statutes including, but not limited to, the ADA and the FMLA.

16. Accordingly, Defendant is liable under the ADA for the unlawful discrimination, failure to accommodate, failure to engage in the interactive process, and retaliation to which it subjected Plaintiff. Defendant is also liable under the FMLA for unlawfully interfering with Plaintiff's rights and for retaliating against Plaintiff in violation of the FMLA as more fully alleged herein.

## ADMINISTRATIVE PREREQUISITES

17. Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

18. On August 31, 2026, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, disability discrimination, failure to provide a reasonable accommodation, failure to engage in the good-faith interactive process, and retaliation.

19. On October 5, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights, including a Notice of Right to Sue, in reference to her Charge of Discrimination (EEOC Charge No. 511-2026-05118) against Defendant.

20. This action is being filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue from the EEOC.

21. All conditions precedent to bringing this action have been performed or have occurred.

## **GENERAL ALLEGATIONS**

22. Plaintiff Megan Schwartz is a 45-year-old female who manages a chronic medical condition involving ongoing immune suppression, which has been confirmed by bloodwork and laboratory testing.

23. Plaintiff's condition causes persistent fatigue, non-restorative

sleep, and cognitive strain, and produces physical flare-ups that worsen with cumulative physical, environmental, and cognitive demands. These symptoms substantially limit Plaintiff's ability to sustain focus, manage prolonged in-person demands, sleep, and maintain consistent performance without appropriate flexibility.

24. Plaintiff manages her condition under the care of her treating physician and her licensed therapist.

25. On or about May 19, 2025, Defendant hired Plaintiff as an Organizational Effectiveness Manager within its Human Resources function at AdventHealth Carrollwood, earning approximately $126,000.00 per year.

26. In that role, Plaintiff designed, developed, and delivered hospital-wide leadership development programs, facilitated corporate and hospital-based instructional courses and professional development workshops, consulted with healthcare leadership teams, managed project timelines for corporate content rollout, and participated in facilitation rotations for institutional initiatives, including the "Whole Care Experience" program.

27. From approximately May 2025 through October 2025, Plaintiff reported directly to Susan Barnish and had a dotted-line reporting

relationship to Stephanie Stringer. During that period, Plaintiff performed her duties well, received positive feedback regarding her work, and had no comparable performance or disciplinary issues.

28. In approximately October 2025, Kristin Jones became Plaintiff's direct supervisor, while Stephanie Stringer remained Plaintiff's dotted-line human resources leader.

29. In November 2025, Plaintiff submitted a formal request for reasonable accommodation under the ADA related to her chronic medical condition.

30. That request was denied on or about November 20, 2025. Plaintiff appealed the denial, and a modified accommodation was issued on or about December 3, 2025.

31. The approved accommodation included, among other things, remote workdays each month, a flexible start time, and closer parking, and was set for a scheduled six-month review.

32. Rather than honor the accommodation that Defendant itself approved, Ms. Jones proceeded to restrict and undermine it. In a directive issued in December 2025, Ms. Jones asserted that Plaintiff should not be working more than three days from home and invoked a purported policy

to block Plaintiff's approved remote days. Ms. Jones verbally forbade Plaintiff from using her approved ADA remote days during weeks that included PTO or a holiday.

33. On or about January 27, 2026, Ms. Jones told Plaintiff that she did not want or need to know Plaintiff's medical reason, emphasized that the accommodation was "temporary," stated that Plaintiff's position "was never intended to be remote," and stated that she needed to be mindful of what she allowed Plaintiff to do because "team members talk" and were aware of who received flexibility. Ms. Jones also demanded a "direct line of sight" into Plaintiff's activities and required weekly remote-day work reports not imposed on employees without accommodations.

34. On or about January 28, 2026, Plaintiff sent a written "Request for HR Guidance" email to Stephanie Stringer documenting these concerns, including her ongoing immune suppression, the exacerbating effect of sustained stress on her recovery, and her fear that the accommodation process was being mishandled.

35. Despite the escalating scrutiny, Plaintiff continued to perform at a high level. On February 11, 2026, a colleague circulated a "shout-out" praising Plaintiff's facilitation of a leadership development session,

describing her as "approachable, genuine," and crediting her with creating "a space where open dialogue could really happen." Ms. Jones responded that she was "not a bit surprised that the session was a great success" and that Plaintiff "has done a great job of building relationships."

36. Beginning in approximately late April or early May 2026, Stephanie Stringer transferred from AdventHealth Carrollwood, and Prentiss Sorrells II became the new Human Resources Business Partner at Carrollwood. After that transition, Plaintiff experienced increased performance scrutiny and documentation involving Ms. Jones and Mr. Sorrells.

37. On or about May 4, 2026, Plaintiff opened a new ADA accommodation renewal case (Case No. C-0131559), requesting remote work up to four times per month, a flexible start time between 7:00 a.m. and 8:00 a.m., and closer parking. During the same period, Plaintiff notified Employee Relations representative Elizabeth Brinson in writing of her severe anxiety and requested guidance regarding Ms. Jones's escalating scrutiny.

38. On or about May 14, 2026, while Plaintiff's ADA accommodation renewal remained pending, Ms. Jones issued disciplinary

documentation alleging that Plaintiff was "not meeting expectations" regarding Whole Care Experience facilitation. Stephanie Stringer had previously told Plaintiff that she could begin facilitating the Whole Care Experience program when she felt comfortable and ready, and Plaintiff had attended sessions to observe other facilitators and was actively preparing to facilitate independently. Plaintiff was never given a specific deadline, quantitative requirement, or timeframe by which she was required to begin facilitating.

39. Plaintiff refused to sign the reprimand and disputed its factual allegations. That same day, Plaintiff again contacted Elizabeth Brinson to report the ongoing hostile environment.

40. On or about May 15, 2026, Defendant's local Employee Relations function issued a verbal determination of "no findings" regarding Plaintiff's complaints of harassment and ADA and FMLA retaliation. That same day, Plaintiff met with her treating physician and her therapist to address the physical and mental toll of the ongoing workplace conduct, and her medical team supported and documented the clinical necessity of intermittent FMLA leave.

41. At the time Ms. Jones issued the May 14, 2026 disciplinary

documentation, Plaintiff had not yet requested FMLA leave. On or about May 19, 2026, Plaintiff formally filed for intermittent FMLA leave, and additional disciplinary documentation followed.

42. Employee Relations verbally acknowledged that the restrictions Ms. Jones had placed on Plaintiff's approved ADA remote days were "entirely inappropriate," yet Employee Relations declined to remove the disputed disciplinary documentation or to take prompt corrective action, instead suggesting that Plaintiff should have initiated additional clarification regarding unwritten or shifting expectations.

43. On or about May 21, 2026, Plaintiff escalated an ADA accommodation interference complaint directly to corporate Human Resources, including Latarsha Beacham and Barbara Thomason, explaining that the local "no findings" determination was inadequate and that Ms. Jones's December directive had manufactured a non-existent corporate policy to block her approved ADA remote days.

44. On or about May 21 and May 22, 2026, Human Resources Business Partner Ashley Longstreet confirmed in writing that Plaintiff's ADA remote days were not blocked by holidays or PTO, stating that "if your ADA day falls on a week with a holiday or PTO you are allowed the day as

long you have not used all of your ADA days earlier in the month." This written confirmation directly contradicted the restrictions Ms. Jones had imposed and the disciplinary posture Defendant had taken toward Plaintiff.

45. Plaintiff used approved FMLA leave on Friday, May 22, 2026. Late in the evening on Memorial Day, May 25, 2026, and again on May 26, 2026, Ms. Jones sent Plaintiff emails raising additional performance concerns and copying Employee Relations. These disputed allegations were sent immediately following Plaintiff's protected use of FMLA leave and immediately preceding a scheduled May 27, 2026 ADA accommodation review, which Plaintiff had asked to postpone because Mr. Sorrells was on PTO that day.

46. In June 2026, Defendant conducted a mediation involving Plaintiff, Ms. Jones, Elizabeth Brinson, and Mr. Sorrells. During the mediation, Plaintiff specifically asked whether there were any additional expectations, performance concerns, or other matters she needed to address. No additional concerns were identified to her at that time.

47. In the months that followed, Defendant nonetheless generated additional performance documentation and disciplinary actions. On or about August 4, 2026, Ms. Jones issued a second Written Corrective Action

citing policy CW HR 237, and Plaintiff was placed on a Performance Improvement Plan that included performance concerns that had not been raised during the June 2026 mediation, all while Plaintiff was seeking additional FMLA leave.

48. Because of the distress Ms. Jones's one-on-one meetings caused, Plaintiff requested that a third-party Human Resources observer be present during those meetings to ensure a safe and objective environment. Ms. Jones instead characterized the request as a “refusal to communicate” and documented it as insubordination.

49. As of the filing of this action, Plaintiff remains employed by Defendant and has been on approved FMLA leave.

50. Plaintiff engaged in protected activity by requesting an ADA accommodation in November 2025, appealing its denial, submitting a written “Request for HR Guidance” in January 2026, requesting an accommodation renewal in May 2026, filing for and using protected FMLA leave, and repeatedly complaining internally to Employee Relations and corporate Human Resources about disability discrimination and the interference with her approved accommodation.

51. Defendant's stated performance-based reasons for its escalating

documentation and discipline are pretextual. Plaintiff performed well and received positive feedback before she requested an accommodation and before Ms. Jones became her direct supervisor; the performance criticisms materialized only after Plaintiff requested and appealed accommodations, complained internally, and used protected leave. Defendant's own Human Resources personnel confirmed in writing that the accommodation restrictions driving the conflict were improper, yet Defendant declined to remove the disputed documentation, left the accommodation renewal unresolved, and continued to escalate discipline.

52. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered severe situational anxiety, a major depressive flare-up, and physical flare-ups of her medical condition requiring treatment with her physician and licensed therapist. Plaintiff's repeated one-on-one meetings with Ms. Jones left her crying and physically shaking, and the sustained stress has interfered with her sleep, her ability to eat, and her daily functioning. Plaintiff has been forced to exhaust intermittent FMLA hours to recover from stress-induced flare-ups caused by Defendant's conduct, has incurred out-of-pocket costs for her medical and therapy treatment, and has suffered humiliation, damage to her professional reputation, and

diminished career standing.

53. At all times relevant herein, Plaintiff was a qualified individual with a disability who could perform the essential functions of her position, with or without reasonable accommodation.

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
## Disability Discrimination
## 42 U.S.C. §§ 12101-12213

54. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 53 as though fully set forth herein.

55. At all times material herein, Defendant employed Plaintiff and was an "employer" within the meaning of the ADA.

56. At all times material herein, Plaintiff was a qualified individual with a disability within the meaning of the ADA in that she had a physical impairment that substantially limited one or more major life activities, and she could perform the essential functions of her position with or without reasonable accommodation.

57. Plaintiff's chronic medical condition, which involves ongoing immune suppression and produces persistent fatigue, non-restorative sleep, cognitive strain, and physical flare-ups, substantially limits one or more

major life activities, including sleeping, concentrating, caring for herself, and working.

58. Defendant knew of Plaintiff's disability through, among other things, Plaintiff's ADA accommodation request in November 2025, her appeal of the denial, her accommodation renewal request in May 2026, and her communications with Employee Relations and corporate Human Resources regarding her disability and need for accommodation.

59. After Ms. Jones became Plaintiff's direct supervisor and learned of Plaintiff's medical accommodation needs, Defendant subjected Plaintiff to adverse terms and conditions of employment because of her disability.

60. Among other things, Defendant restricted and undermined Plaintiff's approved accommodation, invoked a non-existent policy to block Plaintiff's approved remote days during PTO and holiday weeks, demanded a "direct line of sight" into Plaintiff's activities, required weekly remote-day work reports not imposed on employees without accommodations, subjected Plaintiff to heightened and microscopic scrutiny, issued "not meeting expectations" disciplinary documentation, issued a second Written Corrective Action, and placed Plaintiff on a Performance Improvement Plan.

61. Defendant treated Plaintiff less favorably than similarly situated

employees without disabilities and without protected accommodation activity, including other members of the Organizational Effectiveness team who used remote days without the restrictive conditions and heightened tracking imposed on Plaintiff.

62. Defendant took the foregoing actions against Plaintiff because of Plaintiff's disability.

63. Defendant's conduct constituted unlawful discrimination against Plaintiff on the basis of disability in violation of the ADA.

64. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered damages, including lost benefits, lost earning capacity, emotional distress, mental anguish, humiliation, loss of dignity, and other pecuniary and non-pecuniary losses.

**WHEREFORE**, Plaintiff, MEGAN SCHWARTZ, demands trial by jury on all issues so triable as of right, and respectfully requests judgment against Defendant, ADVENTIST HEALTH SYSTEM/SUNBELT, INC. d/b/a ADVENTHEALTH CARROLLWOOD, and the following relief:

A. A declaration that Defendant violated the ADA by discriminating against Plaintiff because of her disability;

B. Back pay, front pay, lost benefits, and other equitable and

monetary relief sufficient to make Plaintiff whole;

C. Compensatory damages as allowed by law;

D. Pre-judgment and post-judgment interest as allowed by law;

E. Reasonable attorneys' fees, costs, and expenses as allowed by law; and

F. Such other and further relief as the Court deems just and proper.

## COUNT II
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
## Failure to Accommodate / Failure to Engage in the Interactive Process
## 42 U.S.C. §§ 12101-12213

65. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 53 as though fully set forth herein.

66. At all times material herein, Defendant employed Plaintiff and was an "employer" within the meaning of the ADA.

67. At all times material herein, Plaintiff was a qualified individual with a disability who, with or without reasonable accommodation, could perform the essential functions of her position.

68. The ADA imposes an affirmative obligation upon employers to provide reasonable accommodations to qualified employees with disabilities, unless doing so would cause undue hardship, and requires

employers to engage in a timely, good-faith interactive process to identify potential accommodations.

69. Plaintiff notified Defendant of her disability and requested reasonable accommodations related to her chronic medical condition, including her request in November 2025 and her accommodation renewal request on or about May 4, 2026.

70. Plaintiff's requested accommodations, including remote workdays, a flexible start time, and closer parking, were reasonable on their face and would have enabled Plaintiff to perform the essential functions of her position.

71. Although Defendant approved a modified accommodation on or about December 3, 2025, Defendant thereafter failed to honor that accommodation, restricting and undermining it through a non-existent policy that blocked Plaintiff's approved remote days during PTO and holiday weeks.

72. Defendant's own Human Resources personnel confirmed in writing, on or about May 21 and May 22, 2026, that the restrictions imposed on Plaintiff's approved ADA remote days were contrary to the terms of the accommodation, and Employee Relations acknowledged that those

restrictions were "entirely inappropriate."

73. Despite that knowledge, Defendant left Plaintiff's May 2026 accommodation renewal unresolved, failed to provide the accommodation Plaintiff requested, and failed to engage in a good-faith interactive process to resolve the very restrictions its own personnel admitted were improper.

74. Defendant's failure and refusal to provide a reasonable accommodation, including its failure to engage in the interactive process, constituted discrimination in violation of the ADA.

75. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages, including lost benefits, lost earning capacity, emotional distress, mental anguish, humiliation, loss of dignity, and other pecuniary and non-pecuniary losses.

**WHEREFORE**, Plaintiff, MEGAN SCHWARTZ, demands trial by jury on all issues so triable as of right, and respectfully requests judgment against Defendant, ADVENTIST HEALTH SYSTEM/SUNBELT, INC. d/b/a ADVENTHEALTH CARROLLWOOD, and the following relief:

A. A declaration that Defendant violated the ADA by failing to accommodate Plaintiff and failing to engage in the good-faith interactive process;

B. Back pay, front pay, lost benefits, and other equitable and monetary relief sufficient to make Plaintiff whole;

C. Compensatory damages as allowed by law;

D. Pre-judgment and post-judgment interest as allowed by law;

E. Reasonable attorneys' fees, costs, and expenses as allowed by law; and

F. Such other and further relief as the Court deems just and proper.

**COUNT III**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**Retaliation**
**42 U.S.C. §§ 12101-12213**

76. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 53 as though fully set forth herein.

77. At all times material herein, Defendant employed Plaintiff and was an “employer” within the meaning of the ADA.

78. Plaintiff engaged in protected activity under the ADA by, among other things, requesting a reasonable accommodation in November 2025, appealing the denial of that accommodation, submitting a written “Request for HR Guidance” in January 2026, requesting an accommodation renewal in May 2026, and complaining internally to Employee Relations and

corporate Human Resources about disability discrimination and the interference with her approved accommodation.

79. Defendant knew Plaintiff engaged in protected activity under the ADA.

80. After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to materially adverse actions.

81. Those materially adverse actions included, but were not limited to, intensifying its scrutiny of Plaintiff, issuing "not meeting expectations" disciplinary documentation on May 14, 2026 while Plaintiff's accommodation renewal remained pending, sending disputed performance allegations immediately after Plaintiff's protected activity, characterizing Plaintiff's request for a neutral Human Resources observer as insubordination, issuing a second Written Corrective Action on August 4, 2026, and placing Plaintiff on a Performance Improvement Plan in August 2026 that included concerns never raised during the June 2026 mediation.

82. The adverse actions taken against Plaintiff were materially adverse in that they would dissuade a reasonable employee from requesting accommodation or opposing disability discrimination.

83. There is a causal connection between Plaintiff's protected

activity and Defendant's materially adverse actions, as supported by the close temporal proximity between Plaintiff's protected activity and each of the adverse actions, together with Defendant's own written admissions that the accommodation restrictions were improper.

84. Defendant's conduct constituted unlawful retaliation against Plaintiff in violation of the ADA.

85. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered damages, including lost benefits, lost earning capacity, emotional distress, mental anguish, humiliation, loss of dignity, and other pecuniary and non-pecuniary losses.

**WHEREFORE**, Plaintiff, MEGAN SCHWARTZ, demands trial by jury on all issues so triable as of right, and respectfully requests judgment against Defendant, ADVENTIST HEALTH SYSTEM/SUNBELT, INC. d/b/a ADVENTHEALTH CARROLLWOOD, and the following relief:

A. A declaration that Defendant violated the ADA by retaliating against Plaintiff for engaging in protected activity;

B. Back pay, front pay, lost benefits, and other equitable and monetary relief sufficient to make Plaintiff whole;

C. Compensatory damages as allowed by law;

D. Pre-judgment and post-judgment interest as allowed by law;

E. Reasonable attorneys' fees, costs, and expenses as allowed by law; and

F. Such other and further relief as the Court deems just and proper.

## COUNT IV
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT
## Interference
## 29 U.S.C. § 2601 et seq.

86. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 53 as though fully set forth herein.

87. At all times material herein, Plaintiff was an eligible employee within the meaning of the FMLA.

88. At all times material herein, Defendant was an employer within the meaning of the FMLA.

89. Plaintiff was entitled to leave under the FMLA because she suffered from a serious health condition.

90. Plaintiff requested and took FMLA leave, including intermittent FMLA leave filed on or about May 19, 2026, and continuous FMLA leave approved through September 17, 2026.

91. Plaintiff exercised rights protected by the FMLA by requesting

and taking approved medical leave.

92. Defendant knew Plaintiff had requested, been approved for, and used FMLA leave.

93. Defendant interfered with, restrained, and denied Plaintiff's exercise of rights under the FMLA by, among other things, using Plaintiff's protected leave as a negative factor in its treatment of her, issuing additional disciplinary documentation following Plaintiff's FMLA filing, sending disputed performance allegations immediately after Plaintiff's protected FMLA use on May 22, 2026, and placing Plaintiff on a Performance Improvement Plan while she was seeking additional FMLA leave.

94. Defendant thereby interfered with Plaintiff's exercise of rights protected by the FMLA, in violation of 29 U.S.C. § 2615(a)(1).

95. As a direct and proximate result of Defendant's unlawful interference, Plaintiff has suffered damages including lost wages, salary, employment benefits, and other compensation, and is entitled to all damages and equitable relief authorized by the FMLA.

96. Defendant's violation was not in good faith, and Plaintiff is therefore entitled to liquidated damages to the full extent permitted by law.

WHEREFORE, Plaintiff, MEGAN SCHWARTZ, demands trial by jury

on all issues so triable as of right, and respectfully requests judgment against Defendant, ADVENTIST HEALTH SYSTEM/SUNBELT, INC. d/b/a ADVENTHEALTH CARROLLWOOD, for lost wages, lost salary, lost employment benefits, liquidated damages, equitable relief including reinstatement or front pay where appropriate, pre-judgment and post-judgment interest, attorneys' fees, costs, and such other relief as the Court deems just and proper.

**COUNT V**
**VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT**
**Retaliation**
**29 U.S.C. § 2601 et seq.**

97. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 53 as though fully set forth herein.

98. At all times material herein, Plaintiff was an eligible employee within the meaning of the FMLA.

99. At all times material herein, Defendant was an employer within the meaning of the FMLA.

100. Plaintiff engaged in protected activity under the FMLA by requesting, obtaining approval for, and using FMLA leave.

101. Defendant knew Plaintiff had requested, been approved for,

and used FMLA leave.

102. After Plaintiff exercised her FMLA rights, Defendant subjected Plaintiff to materially adverse employment actions.

103. Those materially adverse actions included, but were not limited to, issuing additional disciplinary documentation following Plaintiff's FMLA filing, sending disputed performance allegations late in the evening on Memorial Day, May 25, 2026, and again on May 26, 2026, immediately after Plaintiff's protected FMLA use, and placing Plaintiff on a Performance Improvement Plan while she was seeking additional FMLA leave.

104. The temporal proximity between Plaintiff's exercise of FMLA rights and the adverse actions, together with the sequence and escalation of those actions, supports a causal connection between Plaintiff's protected activity and Defendant's adverse actions.

105. Defendant retaliated against Plaintiff because she exercised rights protected by the FMLA, in violation of 29 U.S.C. § 2615(a)(2).

106. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered damages including lost wages, salary, employment benefits, and other compensation, and is entitled to all damages and equitable relief authorized by the FMLA.

107. Defendant's violation was not in good faith, and Plaintiff is therefore entitled to liquidated damages to the full extent permitted by law.

WHEREFORE, Plaintiff, MEGAN SCHWARTZ, demands trial by jury on all issues so triable as of right, and respectfully requests judgment against Defendant, ADVENTIST HEALTH SYSTEM/SUNBELT, INC. d/b/a ADVENTHEALTH CARROLLWOOD, for lost wages, lost salary, lost employment benefits, liquidated damages, equitable relief including reinstatement or front pay where appropriate, pre-judgment and post-judgment interest, attorneys' fees, costs, and such other relief as the Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff respectfully requests a trial by jury.

Date this 13th day of November 2026.

*/s/ Jason W. Imler, Esq.*
Jason W. Imler
Florida Bar No. 1004422
Alberto "Tito" Gonzalez
Florida Bar No. 1037033
Carol Bello
Florida Bar No. 1045715
**Imler Law**
23110 State Road 54, Unit 407
Lutz, Florida 33549
(P): 813-553-7709

Jason@ImlerLaw.com
Tito@ImlerLaw.com
Carol@ImlerLaw.com
Leovany@ImlerLaw.com